Mr. Steadman, we'll hear from you first. Thank you, your honor. Good afternoon, your name is Tim Steadman, and I represent the appellants Marsha Moffitt, Dennis Bradford, Emily Butler, and Martin Davis, and I'd like to reserve two minutes for rebuttal. Moffitt, Bradford, Butler, and Davis were all insured by State Farm. All four had car accidents that resulted in their vehicles being declared a total loss. State Farm adjusted those claims using a computer program called Auto Explorer. The plaintiffs allege that Auto Explorer systematically undervalues total loss claims, leaving them without enough money to replace the vehicles that were lost. Auto Explorer is basically a database of sales listings that uses algorithms to adjust advertised sales prices. For example, the advertised price of any vehicle is automatically reduced by nine percent for typical negotiation. There's also reductions and changes for a variety of other things. The use of this program violates rule 43 of the Arkansas regulations, which sets forth unfair settlement practices. Section 10 of that rule dictates how insurers must settle first-party automobile total loss claims. The insurance company can offer a replacement vehicle. They can basically buy the insured a new car that's can also elect to make a cash settlement on one of two bases. The insurance company can find a specific automobile for sale in the local area, basically give the insured enough money to go buy a specific car that's for sale at a local dealer that's comparable to the one that was destroyed. If there aren't any vehicles available, the insurance company can get two quotes from a Any deviation from those methods must be supported by documentation. As alleged in the complaint, State Farm didn't provide any documentation in any of these four cases as to why State Farm needed to deviate from one of the methods set forth in the regulation. Plaintiffs brought claims under the Arkansas Deceptive Trade Practices Act, claims for fraud in the inducement, claims for bad faith, and claims for breach of contract. The district court dismissed all of those claims based on this court's decision and design professionals and citing an Arkansas Court of Appeals case Columbia Mutual. The district court's decision expanded both of those cases and run afoul of Arkansas law. The first case, Columbia, does not stand for the proposition that there's no private right of action under the Arkansas Insurance Code. Columbia was a subrogation case. One insurance company brought suit against another insurance company to share the loss. The allegation was that the first insurance company violated the Arkansas Code by not sending a cancellation policy when the insured themselves canceled the policy. The Arkansas Court of Appeals' decision in that case makes a lot of sense under that backdrop. The Arkansas Court of Appeals held that the insurance company didn't have a private right of action. In fact, the insured wouldn't have a private right of action if the insured had canceled the policy. The Arkansas Court of Appeals made it clear that that rule would not apply if the insurance company had unilaterally canceled the policy. But following the district court's opinion in this case, Columbia Mutual would stand for the proposition that if an insurance company unilaterally canceled an insurance policy and failed to send the notice provided by statute, that the only duty the insurance company has under that situation is to the state and not the insured, and the insured would have no mechanism to enforce that. That's the Columbia decision. Design Professionals is another kind of unique case. Again, it's a subrogation case. Two accounting firms merged. They canceled one of the two insurance policies and didn't purchase tail coverage under one of the two policies. One insurance company sued the other one, suggesting that Section 9 of Rule 43 required the insurance company to disclose the fact that the insured could have purchased tail coverage if they wanted to. This court held that under this circumstance, Rule 43 didn't apply, and the panel's decision in Design Professionals is interesting because first, based on Columbia Mutual, the court says there's no private right of action. The Arkansas Insurance Code does not establish or extinguish a private right of action, and so this clause isn't incorporated into the insurance contract, and the clause that issued there under Section 9 was disclosing available coverages. The court, however, went further and said not only is there no cause of action, but we don't even see how this regulation would be violated here under these circumstances because, similar to Columbia Mutual, the insured had canceled the policy. The insured didn't have any questions about whether they could purchase tail coverage to obtain coverage on the claim. The insured had coverage for the claim. The issue was which one of these two insurance companies would have to pay the loss. Again, viewed in that backdrop, that situation is dramatically different from the situation here where the insureds are bringing claims under the Arkansas Deceptive Trade Practices Act and other provisions. This kind of provision is exactly what the Arkansas Deceptive Trade Practices Act is designed to accomplish. The Arkansas Deceptive Trade Practices Act was passed after this provision. More recently, in the EIR-EVAC case, the Arkansas Supreme Court adopted the specific conduct rule to its Deceptive Trade Practices Act. That rule deals with whether or insurance and other regulated businesses are completely exempt from the Arkansas Deceptive Trade Practices Act or are only exempt from claims where a regulator has told the regulated entity specifically, you can perform this act. Here, we have a regulation that was violated and the insured are bringing a cause to remedy that violation. A number of other states have followed a similar path and held that their state's version, this appears to be a question of first impression in Arkansas. It's not a claim that was dealt with in design professionals or in the Columbia case. A number of other states have held that their version of the Deceptive Trade Practices Act can be used in spite of similar language in the insurance code that the code doesn't establish or extinguish private rights of action. The district court, in interpreting that phrase, essentially viewed that phrase as preempting insurance companies from any claims based on the regulations. And that's just not simply it. The law in Arkansas is that generally those kinds of regulations are incorporated into the insurance contract. The insured certainly have a right to expect the insurance company to comply with those regulations. I'm happy to answer any questions you may have. Otherwise, I'll save the remainder of my time for rebuttal. Very well. Thank you, Your Honor. Mr. Steadman, why don't you go ahead and mute your microphone? Yes, Your Honor, I apologize. Mr. Herzog, we'll hear from you. Yes, may it please the court. My name is Peter Herzog and I represent State Farm. All of the plaintiff's claims in this case are based on an alleged violation of Rule 43 of the Arkansas Insurance Regulations. The district court dismissed the complaint because it was precluded by this court's decision in Designed Professionals, a decision on which Judge Wolman sat on the panel. Designed Professionals held that the duties imposed on insurers under Rule 43 run to the individual insured. And Rule 43 was promulgated under the Arkansas Trade Practices Act. And Arkansas courts hold there's no private right of action for violations of that act. A violation of Rule 43, therefore, can't provide the predicate for a private cause of action. Its enforcement is left to the Arkansas Insurance Commission. Designed Professionals is controlling precedent that was correctly decided. Its rationale applies equally whether the proposed claim is statutory or common law. And no Arkansas state or federal court has held differently or questioned Designed Professionals since it was decided. The court should affirm the district court's dismissal on that ground and on the additional reason that the record demonstrates that State Farm's claim is not statutory under Rule 43. Subsection 10A3 of the rule specifically allows an insurer to settle total loss claims using the total settlement method that State Farm used. Counsel for the plaintiff below and moments ago continued to misconstrue subsection 10A3. 10A3 says when a first party automobile total loss is settled on a basis which deviates from the methods described in subsections A1 and A2 of this section, the deviation must be supported by documentation giving particulars of the automobile's condition and then it specifies deductions. 10A3 does not require, on its face, does not require that the insurer justify the deviation from A1 and A2. Instead, it specifically permits the settlement method used so long as it's of the automobile's condition, limits deductions including any deduction for salvage to those that are measurable, discernible, itemized and specified as well as appropriate in dollar amount and is fully explained to the first party claimant. The plaintiffs included the valuation reports in their complaint. And those reports demonstrate that State Farm provided documentation giving particulars of the automobile's condition to each plaintiff as required. All deductions in the report are itemized and specified as to an appropriate dollar amount. And the basis for the settlement is explained in detail. Therefore, the complaint and the exhibits that the plaintiffs themselves incorporated into it demonstrate that State Farm complied with the regulation and therefore that the plaintiffs can't plausibly allege the necessary legal predicate for their claims and the court should affirm on this additional reason an issue that wasn't reached by the district court. I'm going to focus the rest of my argument on design professionals because that was the basis for the district court's dismissal. The plaintiffs tried in a brief and again during an argument a few minutes ago to distinguish design professionals. Their primary argument is that the ADTPA, the Arkansas Deceptive Trade Practices Act, its Consumer Protection Act, allows the claim because it permits a right of action for consumers even if the Trade Practices Act does not. In other words, the plaintiffs would create private rule 43 causes of action by recasting them as ADTPA claims which is directly contrary to the holding in design professional. Subsection B of the Trade Practices Act, and it gets a little confusing in Arkansas because it's the Trade Practices Act is the Consumer Act, but the Section B of the Trade Practices Act specifically states that no provisions of this subject chapter are intended to establish or extinguish a private right of action for violation of any provision of this subject. And in the Columbia Mutual case cited in our brief, the Arkansas Court of Appeals dismissed the issue in a paragraph and held that the private right of action for a violation of the Trade Practices Act. It follows, therefore, that there's no private right of action for violation of a regulation promulgated pursuant to the Trade Practices Act, and the use of the ADTPA that plaintiffs proposed is contrary to the Trade Practices Act because they would use it to establish a private right of action that didn't exist prior to the adoption of the Trade Practices Act and Regulation 43. Well, couldn't a legislature by separate statute create a right of action based on a violation of the regulation? I'm sorry. I'm sorry, Your Honor. I missed the first part of that. Even if the Trade Practices Act doesn't create a private right of action, couldn't the legislature by separate statute create a right of action for a violation of any given regulation if it wanted to? If it wanted to, it could, and there are several statutes, I think, that we distinguish the cases that were cited in Plaintiff's brief where the statute specifically provides that violation of the statute constitutes a violation of the Arkansas Deceptive Trade Practices Act, but we don't have that here. The Trade Practices Act does not state that, Your Honor, and the Court in Design Professionals and the Arkansas Supreme Court in Columbia Mutual specifically interpreted the Trade Practices Act not to provide a private right of action. My question, though, is why would the Trade Practices Act itself have to be the act that specifies the right of action? Why couldn't the legislature in the Deceptive Trade Practices Act say you, consumer, have a private right of action if an insurance company violates a provision of the Trade Practices Act? There's nothing illogical about that. It could, but it didn't, Your Honor. It depends what unconscionable false or deceptive act means then, I suppose. Well, I think the difference is, Your Honor, and we're not arguing that all insurance conduct is outside the reach of the ADTPA, but what we are arguing is that you cannot base a claim under the ADTPA on a violation of the TPA or the regulations that are promulgated under it because then, Your Honor, you would be acting as a super legislature for the state of Arkansas. The state of Arkansas has decided that enforcement of the TPA and its regulations should be by the Arkansas Insurance Commissioner and not by private citizens, and that's a choice that they're entitled to make. The court would be creating new law for Arkansas if it were to interpret the ADTPA to permit private rights of action based on a violation of the TPA or the regulations promulgated under it, and we demonstrated in our brief that most of the cases that the plaintiffs cited that they said were from other jurisdictions and supported doing exactly that weren't on point. For example, the Washington State case that they spoke about recognized that the statute at issue there, and I'm quoting, expressly provided that violations of the insurance regulations are subject to that state's Consumer Protection Act. The Arkansas statute has no similar provision. Only three of their cases were on point. North Carolina, Tennessee, and Delaware held that their state's Consumer Protection Act allowed private rights of action for violations of an insurance statute. Other statutes like Nevada didn't. New Mexico specifically provided it. Others didn't. The court should decline the invitation to act as a super legislature by picking and choosing among other states' judicial interpretations of their laws. This is a straightforward application of design professionals to the facts alleged by the plaintiffs, and the dismissal should be a unanimous decision. All right. Thank you for your argument. Mr. Steadman, we'll hear from you in rebuttal. Thank you, your honors. Plaintiffs are not asking this court to create new law for Arkansas, and if the court expands upon design professionals and Columbia Mutual Insurance Company in the way that State Farm suggests, it would be creating new law for Arkansas. The use of the ADTPA in other statutes is not unique. One of the first cases under the Arkansas Deceptive Trade Practices Act, the Bryant case that dealt with usury, did exactly the same thing. The ADTPA was used to enforce the usury provision in the Arkansas Constitution. The Arkansas Constitution broadly guarantees individuals a right, a remedy for the wrongs that they have suffered. Here, the plaintiffs have alleged that they've suffered a wrong. I read the regulation differently than State Farm's counsel does. The regulation says that if the meth, I'm sorry, when a first party automobile total loss is settled on a basis which deviates from the methods described in subsections A1 and 2, the deviation must be supported by documentation. There is no documentation about the need to deviate from one of the other two methods. I'm happy to answer any questions that your honors have, and otherwise I'll cede the rest of my time. Thank you for your arguments. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.